UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM MANNO, On Behalf Of Himself And All Others Similarly Situated, And Derivatively On Behalf Of MAXAM ABSOLUTE RETURN FUND, L.P.,

Plaintiff,

v.

MAXAM CAPITAL GP, LLC; MAXAM CAPITAL MANAGEMENT LLC; MAXAM CAPITAL MANAGEMENT LIMITED; and SANDRA L. MANZKE,

Defendants,

and MAXAM ABSOLUTE RETURN FUND, L.P.;

Nominal Defendant.

Civ. No. 1:10-cv-09260-LAP

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES .......... iii

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 3

III. ARGUMENT .......... 4

A. The Request For Attorneys' Fees Is Reasonable .......... 4

1. The Standard For Awarding Attorneys' Fees .......... 4

2. The Request Is Reasonable Under Either The Percentage Method or The Lodestar Method .......... 5

a) The Requested Fees Are Reasonable Under The Percentage of the Fund Method .......... 5

b) The Percentage Fees Are Reasonable Under A Lodestar Check .......... 6

B. The Goldberger Factors Support Awarding The Requested Award of Attorneys' Fees .......... 8

1. The Time and Labor Expended By Counsel Support The Requested Fee .......... 8

2. The Risks of Litigation Support the Requested Fee .......... 12

3. The Magnitude and Complexity of the Action Support The Requested Fee .......... 15

4. The Quality of Class Counsel's Representation Supports The Requested Fee .......... 16

5. The Requested Fee In Relation To The Settlement .......... 17

6. Public Policy Considerations Support The Requested Fee .......... 18

7. The Reaction Of The Class To Date Supports The Requested Fee .......... 18

C. Class Counsel's Expenses Were Reasonably Incurred and Necessary to the Prosecution of the Action .......... 19

IV. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**CASES** **Page(s)**


*In re American Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....................13

*In re American International Group, Inc. Securities Litigation*,
No. 04 Civ. 8141 (DAB),
2013 U.S. Dist. LEXIS 131288 (S.D.N.Y. Sept. 11, 2013)....................19

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
133 S. Ct. 1184 (2013)....................18

*Anwar v. Fairfield Greenwich Ltd.*,
No. 09 CV 118 (VM),
2012 U.S. Dist. LEXIS 78929 (S.D.N.Y. June 1, 2012) ....................17, 20

*Barron v. Igolnikov*,
No. 09 Civ. 4471 (TPG),
2010 U.S. Dist. LEXIS 22267 (S.D.N.Y. Mar. 10, 2010)....................14

*In re Beacon Associates Litigation*,
No. 09 Civ. 777 (CM),
2013 U.S. Dist. LEXIS 82192 (S.D.N.Y. May 9, 2013) ....................6

*In re Bear Stearns Cos., Inc. Securities, Derivative, and ERISA Litigation*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ....................7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....................4

*Chadbourne & Parke LLP v. Troice*,
134 S. Ct. 1048 (2014)....................13

*In re Citigroup Bond Litigation*,
No. 08 Civ. 9522 (SHS),
2013 U.S. Dist. LEXIS 178436 (S.D.N.Y. Dec. 13, 2013) ....................5

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ....................13

*In re Comverse Technology, Inc.*,
06-CV-1825 (NGG)(RER),
2010 U.S. Dist. LEXIS 63342 (E.D.N.Y. June 23, 2010)....................17

*In re Deutsche Telekom AG Securities Litigation*,
No. 00-CV-9475 (NRB),
2005 U.S. Dist. LEXIS 45798 (S.D.N.Y. June 9, 2005) ....................7

*In re FLAG Telecom Holdings, Ltd. Securities Litigation*,
No. 02-CV-3400 (CM) (PED),
2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010)....................4, 6, 15, 20

*Fogarazzo v. Lehman Brothers*,
No. 03 Civ. 5194 (SAS),
2011 U.S. Dist. LEXIS 17747 (S.D.N.Y. Feb. 23, 2011)....................6, 15

*In re Giant Interactive Group, Inc.*,
279 F.R.D. 151 (S.D.N.Y. 2011)....................6

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000) ....................*passim*

*In re Herald, Primeo and Thema Securities Litigation*,
No. 12-156-cv (L), 12-162 (Con),
2014 U.S. App. LEXIS 9871 (2d Cir. May 28, 2014).................... 13-14

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071 (RJH),
2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005)....................5

*In re Independent Energy Holdings PLC Securities Litigation*,
No. 00 Civ. 6689 (SAS),
2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 26, 2003)....................13

*In re Initial Public Offering Securities Litigation*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009) ....................17

*In re Kingate Management Litigation*,
09 Civ. 5386 (DAB),
2011 U.S. Dist. LEXIS 41598 (S.D.N.Y. Mar. 30, 2011)....................14

*Maley v. Del Global Technologies Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................17, 19

*In re Marsh & McLennan Companies, Inc. Securities Litigation*,
No. 04 Civ. 8144 (CM),
2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ....................16

*Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.*,
747 F. Supp. 2d 406 (S.D.N.Y. 2010) ....................14

*Meridian Horizon Fund L.P. v. KPMG (Cayman),*
487 F. App'x 636 (2d Cir. 2012) ........................................................ 14

*Missouri v. Jenkins,*
491 U.S. 274 (1989) ........................................................ 7

*Newman v. Family Management Corp.,*
748 F. Supp. 2d 299 (S.D.N.Y. 2010) ........................................................ 14

*Newman v. Family Mgmt. Corp.,*
530 F. App'x 21 (2d Cir. 2013) ........................................................ 14

*In re Pall Corp.,*
No. CV 07-3359 (JS)(GRB),
2013 U.S. Dist. LEXIS 55592 (E.D.N.Y. Apr. 8, 2013) ........................................................ 13

*In re Sadia S.A. Securities Litigation,*
No. 08 Civ. 9528 (SAS),
2011 U.S. Dist. LEXIS 149107 (S.D.N.Y. Dec. 28, 2011) ........................................................ 6

*Saltz v. First Frontier, LP,*
782 F. Supp. 2d 61 (S.D.N.Y. 2010) ........................................................ 14

*Saltz v. First Frontier, LP,*
485 F. App'x 461 (2d Cir. 2012) ........................................................ 14

*Taft v. Ackermans,*
No. 02 Civ. 7951,
2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) ........................................................ 18

*Teachers' Retirement System v. A.C.L.N., Ltd.,*
No. 01-CV-11814 (MP),
2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ........................................................ 13

*In re Union Carbide Corp. Consumer Products Business Securities Litigation,*
724 F. Supp. 160 (S.D.N.Y. 1989) ........................................................ 7

*In re Veeco Instruments Inc. Securities Litigation,*
No. 05 MDL 01695 (CM),
2007 U.S. Dist. LEXIS 85554 (S.D.N.Y. Nov. 7, 2007) ........................................................ 4, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. ("Wal-Mart Stores"),*
396 F.3d 96 (2d Cir. 2005) ........................................................ 5, 7

*In re WorldCom, Inc. Securities Litigation,*

388 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................5, 16

## STATUTES & RULES

Federal Rules of Civil Procedure ("Fed. R. Civ. P.")
23(h)....................4

Private Securities Litigation Reform Act of 1995 ("PSLRA"),
15 U.S.C. § 78u-4 ....................5

Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a, *et seq.*, ....................8
§ 10(b)....................8
§ 20(a)....................8

Securities Litigation Uniform Standards Act of 1998 ("SLUSA"),
15 U.S.C. § 78bb(f)(1)....................13

Plaintiff William Manno ("Plaintiff") respectfully submits this Memorandum of Law in support of his motion for: (1) an award of attorneys' fees representing not more than 17.5% of the Settlement Fund, plus any interest on such amount at the same rate and for the same periods as earned by the Settlement Fund; and (2) reimbursement of litigation expenses of $24,025.50, plus interest, incurred by Class Counsel in successfully litigating this Action to Settlement.

## I. INTRODUCTION

Plaintiff, a limited partner of the MAXAM Absolute Return Fund, L.P ("MARF"), commenced this class and derivative action (the "Action") on December 10, 2010, asserting securities fraud and common law claims against defendants MAXAM Capital GP, LLC ("MAXAM GP"), MAXAM Capital Management LLC ("MAXAM Capital"), MAXAM Capital Management Limited ("MAXAM Limited"),[1] and Sandra L. Manzke ("Manzke") (collectively, "MAXAM Defendants")[2] in connection with their investment of MARF's assets with Bernard L. Madoff Investment Securities, LLC ("BLMIS").

As set forth in the concurrently-filed Memorandum of Law in Support of Plaintiff's Unopposed Motion for Certification of the Settlement Class and Final Approval of the Settlement and Plan of Allocation, following extensive, good faith, arms'-length negotiations over several months, the Parties reached an agreement regarding the material terms of the Settlement[3] of Plaintiff's class and derivative claims against the MAXAM Defendants. On April

---

[1] Although Plaintiff initially named MAXAM Limited, an offshore wholly-owned subsidiary of MAXAM Capital that initially served as the MARF's administrator, as a defendant, claims against MAXAM Limited were dropped in the Amended Complaint because, as of March 21, 2008, MAXAM Capital began to serve as MARF's administrator, as well as its investment manager. Defendants have informed Class Counsel that MAXAM Limited no longer conducts business and does not have assets.

[2] The MAXAM Defendants and MARF are collectively referred to as "Defendants" herein.

[3] All capitalized terms herein not otherwise defined have the meaning ascribed to them in the Stipulation.

25, 2014, the Parties entered into a Stipulation of Settlement, which was filed with the Court on May 21, 2014. Dkt. No. 26-1. As detailed herein and in the Stipulation, the Settlement provides that Defendants will transfer an Initial Settlement Payment of $1,601,372.00 into the Settlement Fund on behalf of all MAXAM Defendants within ten days of the parties' execution of the Stipulation. Stipulation, ¶ 3.1. Defendants have already made the initial Settlement Payment, which is in the Settlement Fund. A payment of $250,000 is to be paid into the Settlement Fund if certain conditions set forth in a confidential supplemental stipulation among the parties dated April 25, 2014, are satisfied. *Id.* ¶ 3.2. Defendants have also established a Future Litigation Reserve of $1,257,187.10. *Id.* ¶ 3.3. If there are no Claims pending against any Defendant (or Person to whom any Defendant owes an indemnification obligation) as of December 12, 2014, the Future Litigation Reserve will be terminated, and any remaining funds in the Future Litigation Reserve will be paid into the Settlement Fund. *Id.* ¶ 3.3.

Under the Stipulation, within 14 days of the dissolution of the Future Litigation Reserve, Defendants will affirm in writing that monies withdrawn from the Future Litigation Reserve were used only to satisfy reasonable legal fees and expenses, and will provide to Plaintiff's Counsel an accounting of any such fees and expenses. *Id.* ¶ 3.4. In addition to the foregoing monetary consideration, the Settlement provides that the Sandra L. Manzke Revocable Trust ("Manzke Trust"), which is a limited partner of MARF and for which Defendant Manzke is the sole trustee, will submit a claim to the Madoff Victim Fund[4] for losses that the Manzke Trust incurred as a result of Madoff's fraud and will assign to the Settlement Fund all distributions, if any, that the Manzke Trust receives from the Madoff Victim Fund. Defendant Manzke has filed a claim on behalf of the Manzke Trust with the Madoff Victim Fund.

[4] The Madoff Victim Fund, www.madoffvictimfund.com, was established by the Department of Justice Asset Forfeiture Distribution Program for distribution to net losers of Madoff's fraud.

The Settlement is the product of substantial effort by Class Counsel to independently research and investigate and plead the factual and legal claims asserted in the Action. From the inception of this litigation, Class Counsel has spent 1,753.10 hours (at a lodestar value of $905,072.00) and expended $24,025.50 in out-of-pocket expenses—all with a substantial risk of non-recovery. Class Counsel respectfully seeks an award of attorneys' fees representing not more than 17.5% of the Settlement Fund, plus any interest on such amount at the same rate and for the same periods as earned by the Settlement Fund, and reimbursement of litigation expenses of $24,025.50, plus interest. If the entire Future Litigation Fund were to be added to the Settlement Fund,[5] the requested 17.5% fee would amount to $500,247.84 (without interest), yielding a negative multiplier of approximately .55.

Class Counsel's fee request is eminently reasonable and compares favorably with the relevant benchmarks for similar litigation. Indeed, District courts in this Circuit regularly grant far greater fee awards ranging from 25% to 33%. Moreover, the requested expenses were necessary for the prosecution of the Action.

The Settlement of this Action represents the best possible outcome for the Settlement Class in light of the attendant risks of continued litigation and is the direct result of Class Counsel's exceptional skill, tenacity, and advocacy.

## II. BACKGROUND

For a full recitation of the factual and procedural background of this Action and the events leading to the Settlement, Plaintiff respectfully refers the Court to the concurrently filed Plaintiff's Unopposed Motion for Certification of the Settlement Class and Final Approval of the Settlement and Plan of Allocation, and the Declaration of Demet Basar in Support of Plaintiff's

[5] In this scenario, the Settlement Fund would equal $2,858,559 (the Initial Settlement Payment of $1,601,372 plus the Future Litigation Reserve of $1,257,187).

(A) Unopposed Motion for Certification of the Settlement Class and Final Approval of the Settlement and Plan of Allocation and (B) Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Basar Decl." or "Basar Declaration").

## III. ARGUMENT

### A. The Request For Attorneys' Fees Is Reasonable

#### 1. The Standard For Awarding Attorneys' Fees

Rule 23(h) of the Federal Rule of Civil Procedure ("Fed. R. Civ. P.") permits the Court to award reasonable attorneys' fees in a certified class action. Indeed, the United States Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). As courts in this District have held, awards of attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *68 (S.D.N.Y. Nov. 5, 2010) (internal quotation marks omitted); *see In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554, at *8 (S.D.N.Y. Nov. 7, 2007) (same).

Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *26 (S.D.N.Y. Oct. 19, 2005).

### 2. The Request Is Reasonable Under Either The Percentage Method or The Lodestar Method

As the Second Circuit held in *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, "[c]ourts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." 396 F.3d 96, 121 (2d Cir. 2005) ("*Wal-Mart Stores*"). Regardless of whether the Court applies the percentage or lodestar method here, its ultimate task is to ensure that the fee award is "reasonable" under the circumstances. *Goldberger*, 209 F.3d at 47. The determination of "reasonableness" is within the Court's discretion. *Id.; see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005). The 17.5% fee that Class Counsel has requested is undoubtedly reasonable under the circumstances presented here.

#### a) The Requested Fees Are Reasonable Under The Percentage of the Fund Method

The percentage of the fund method is "now firmly entrenched in the jurisprudence of this Circuit." *In re Citigroup Inc. Bond Litig.*, No. 08 Civ. 9522 (SHS), 2013 U.S. Dist. LEXIS 178436, at *10 (S.D.N.Y. Dec. 13, 2013) (internal quotation marks and citation omitted). Moreover, as the *Citigroup* Court noted, the language of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, "mandates that '[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages . . . actually paid to the class.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(6)).

Class Counsel respectfully requests a fee award representing not more than 17.5% of the Settlement Fund, plus any interest on such amount at the same rate and for the same periods as earned by the Settlement Fund. This fee request is well within the range of amounts typically awarded in similar class action settlements in this Circuit. *See In re Beacon Assocs. Litig.*, 09 Civ. 777 (CM), 2013 U.S. Dist. LEXIS 82192, at *74 (S.D.N.Y. May 9, 2013) ("20% of the

settlement amount is not only within the range of amounts awarded in similar actions where court approval of fees is required, it is actually below the range of 25%-33% that is often allowed in this court"); *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 U.S. Dist. LEXIS 149107, at *10 (S.D.N.Y. Dec. 28, 2011) (Scheindlin, J.) (awarding 30% of $27 million fund); *In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (Engelmayer, J.) (awarding 33% of $13 million fund); *Fogarazzo v. Lehman Bros.*, No. 03 Civ. 5194 (SAS), 2011 U.S. Dist. LEXIS 17747, at *2 (S.D.N.Y. Feb. 23, 2011) (Scheindlin, J.) (awarding one-third of $2.25 million fund).

Thus, when considered on a percentage basis, the requested fee of 17.5% of the Settlement Fund, plus interest, is lower than the fees commonly awarded in securities class actions involving settlements of comparable value.

**b) The Percentage Fees Are Reasonable Under A Lodestar Check**

The reasonableness of Class Counsel's requested fee is supported by the lodestar cross-check. The Second Circuit encourages district courts to determine the reasonableness of a fee request pursuant to the lodestar check, *see Goldberger*, 209 F.3d at 50, which requires the Court to: (i) determine Class Counsel's lodestar by multiplying the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and (ii) adjust that lodestar figure by applying a multiplier "to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *FLAG Telecom*, 2010 U.S. Dist. LEXIS 119702, at *68. Here, the lodestar method confirms the reasonableness of the fee request.

In this entirely contingent action, Class Counsel expended more than 1,753.10 hours of professional time in investigating, prosecuting, and ultimately settling these claims (excluding time spent on the instant fee and expense application). *See* Basar Declaration, ¶ 45. Class

Counsel's lodestar, derived by multiplying hours billed by Wolf Haldenstein's current[6] hourly rates for its attorneys, paralegals, and other professional staff, is $905,072.00. As stated above, under the best scenario at this time, Class Counsel's fee request would yield a negative multiplier of .55.

This is lower than the average positive lodestar fees typically awarded in this Circuit. Indeed, in complex class actions with significant contingency risks like this one, courts typically award lodestar multipliers between 3 and 4.5. *See Wal-Mart Stores*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable and explaining that "multipliers of between 3 and 4.5 have become common" in common fund class actions); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-9475 (NRB), 2005 U.S. Dist. LEXIS 45798, at **13-14 (S.D.N.Y. June 9, 2005) (awarding fee representing a 3.96 multiplier). The negative lodestar multiplier therefore supports the reasonableness of the fee request. *See In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) ("the lodestar cross-check results in a negative multiplier of less than 0.92 – a strong indication of the reasonableness of the proposed fee").

In sum, whether calculated as a percentage-of-the-fund or under the lodestar method, the requested fee is within (or, in this case, below) the range of amounts regularly awarded by courts in securities class actions. Additionally, as set forth below, the factors established by the Second Circuit in *Goldberger* further demonstrate that the requested fee is eminently fair.

---

[6] The Supreme Court has approved the use of current rather than historical rates in the lodestar calculation. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). Using current rates helps "compensate for the delay in receiving compensation, the inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989) (citation omitted).

### B. The *Goldberger* Factors Support Awarding The Requested Award of Attorneys' Fees

Applying either the lodestar or the percentage method, the Court should consider the following factors, known as the *Goldberger* factors: (1) the time and labor expended by Class Counsel; (2) the magnitude and complexities of the litigation; (3) the risks of the litigation; (4) the quality of representation; (5) the requested fee in relation to the Settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. Consideration of these factors provides further confirmation that Class Counsel's fee request is reasonable.

#### 1. The Time and Labor Expended By Counsel Support The Requested Fee

Plaintiff commenced this class and derivative action on December 10, 2010, with the filing of a complaint alleging direct and derivative counts against the MAXAM Defendants, including direct claims for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a, *et seq.*, and control person liability under Section 20(a) of the Exchange Act against Defendants MAXAM Capital and Manzke, as well as direct and derivative claims for common law fraud, negligent misrepresentation, breach of fiduciary duty, gross negligence and mismanagement, and unjust enrichment. Dkt. No. 1. Subsequently, on June 17, 2013, Plaintiff filed an Amended Class Action and Derivative Complaint ("Amended Complaint"), asserting the same claims as those in the initial complaint and, in addition, seeking the imposition of a constructive trust over MARF's assets and injunctive relief. Dkt. No. 16.

Prior to filing the initial complaint, Class Counsel researched and conducted a thorough investigation of the facts underlying Plaintiff's allegations, including reviewing account statements, private placement memoranda and other documents relating to MARF, and various press releases, interviews, news articles, and other media reports concerning Madoff and the MAXAM Defendants. Class Counsel also exhaustively researched and analyzed the applicable

body of law with respect to potential and the actual claims asserted in this Action, and the defenses thereto. Cognizant of the need to protect and preserve the rights of MARF's limited partners prior to the expiration of any applicable statutes of limitation, Class Counsel filed the first and only class action complaint against the MAXAM Defendants. As described below, because, among other things, there were numerous adverse rulings in actions against managers of Madoff feeder funds (like the MAXAM Defendants), several of which were on appeal and subject to reversal,[7] Plaintiff entered into a tolling agreement with Defendants and the Action was stayed on May 31, 2011. Dkt. No. 11.

Thereafter, Class Counsel continued to protect the interests of the Class by closely monitoring the Trustee's Adversary Proceeding (defined below) against the MAXAM Defendants (and related Persons), reviewing the factual allegations in the Trustee's complaint and the available discovery generated in the Adversary Proceeding. Class Counsel reviewed the numerous briefs filed by the Trustee and the MAXAM Defendants in the Adversary Proceeding and, later, on appeal. Class Counsel also analyzed pleadings and evidence from other similar and/or related actions filed against various hedge fund managers who placed their clients' funds with Madoff, including the MAXAM Defendants here. Class Counsel retrieved, reviewed and analyzed pleadings, other court documents and available evidence in the action entitled *Retirement Program for Employees of the Town of Fairfield, et al. v. Bernard L. Madoff, et al.*, FBT CV 095023735 (the "Fairfield Action"), pending in the Connecticut Superior Court. The Fairfield Action was an individual action by three investors in MARF against, among others, certain of the MAXAM Defendants, and was settled on March 13, 2013. Class Counsel extensively researched and analyzed the viability of filing a motion for the appointment of a

[7] *See supra* note 10.

receiver, and ultimately determined to file the Amended Complaint which sought the imposition of a constructive trust over MARF's assets and injunctive relief. In drafting the Amended Complaint, Class Counsel reviewed MARF's financial statements and previously unavailable documents; supplemented the factual allegations concerning the Fairfield Action with recent developments, including the settlement of the action; and supplemented the scienter allegations concerning the MAXAM Defendants' history with and connections to Madoff based on the facts uncovered while monitoring related litigation, including the Trustee's Adversary Proceeding.

Moreover, on September 10, 2013, Plaintiff made a limited objection to a proposed settlement of the adversary proceeding captioned *Picard v. Maxam Absolute Return Fund, L.P. et al.*, No. 10-05342-brl (Bankr. S.D.N.Y.) ("Adversary Proceeding"). Irving H. Picard, the trustee for the substantively consolidated liquidation of BLMIS and Madoff (the "Trustee"), had filed the Adversary Proceeding on or about December 8, 2010, against MARF, the MAXAM Defendants, and certain related Persons seeking, among other things, to recover, either directly from MARF or from subsequent transferees, $97,800,000.00 in transfers that were received from BLMIS by MARF; $5,800,000.00 in fees that were received by MAXAM Capital for its management services; and to disallow or equitably subordinate MARF's customer claim in the amount of $215,287,000 against the BLMIS estate under the Securities Investor Protection Act ("SIPA Claim"). On August 14, 2013, the Trustee and the Defendants (and certain other related Persons) entered into a settlement agreement to resolve the Adversary Proceeding (the "Trustee Settlement"). Pursuant to the Trustee Settlement, (i) MARF agreed to convey to the Trustee the amount of $97,800,000.00 ("Trustee's Settlement Payment"); and (ii) the Trustee agreed to allow MARF's SIPA Claim plus a $61,400,000.00 credit against the BLMIS estate pursuant to Section

502(h) of the United States Bankruptcy Code, for a total allowed claim of $276,687,000.00 ("Allowed SIPA Claim"). Trustee Settlement, ¶ 10.[8]

Plaintiff's limited objection to the proposed Trustee Settlement sought clarification of certain language in the Trustee Settlement agreement that Plaintiff interpreted as potentially having a binding, precedential or evidentiary effect with respect to the MAXAM Defendants' ability to deduct amounts from the proceeds of MARF's Allowed SIPA Claim to cover certain expenses and preexisting obligations before making distributions to MARF's investors. After negotiation, Plaintiff's limited objection was resolved by including certain clarifying language in the proposed final judgment approving the proposed Trustee Settlement and dismissing the Adversary Proceeding, which was entered on September 17, 2013. *See* Basar Decl. Ex. 6, at 2.

In late September 2013, shortly after the Adversary Proceeding was dismissed, the Parties had exploratory discussions concerning a potential resolution of this Action but these early discussions proved unsuccessful. In October 2013, the Parties again explored the possibility of a settlement and engaged in extensive good faith, arms' length negotiations over the next several months over numerous telephone conversations and several in-person meetings. After reaching agreement on the basic terms of the settlement, the Parties negotiated and entered into a memorandum of understanding, and, subsequently, spent months carefully preparing a settlement agreement, which entailed negotiating appropriate language, reviewing information about Defendants' financial condition, and the resolution of several complex issues. Class Counsel also directed its efforts to preparing preliminary settlement approval papers and supporting documents, including a clear and informative notice of settlement.

---

[8] A copy of the Trustee Settlement is attached hereto as Exhibit 4 to the Basar Declaration.

On April 25, 2014, Class Counsel and Defendants entered into the Stipulation for the terms of the proposed Settlement and on May 21, 2014, Plaintiff filed his unopposed motion for preliminary approval of the Settlement. On June 10, 2014, the Court entered the Preliminary Approval Order, directed notice and, among other things, scheduled the final Settlement Fairness Hearing.

Class Counsel devoted more than 1,753.10 hours to this Action (excluding time devoted to preparing this submission), yielding a combined "lodestar" amount of $905,072.00. Many of these hours were expended during the riskiest phase of litigation before settlement negotiations had commenced and at a time when there was little or no certainty that Class Counsel would receive anything for their considerable time and effort. Class Counsel's hours, which resulted in the favorable Settlement, are plainly reasonable in view of the work performed in this complex securities action.

The time and effort that Class Counsel has devoted to this Action, and their commitment to the efficient management of the litigation, support approval of the requested award. *See* Basar Declaration, ¶ 47.

**2. The Risks of Litigation Support the Requested Fee**

The Second Circuit has recognized that cases litigated on a contingent fee basis implicate certain risks, which are important considerations in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted). "Little about litigation is risk-free, and class actions confront even more substantial risks than other

forms of litigation." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004); *see also In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award").

From the outset of this Action, Class Counsel faced complex and legal factual issues that presented significant risks to establishing liability and damages. As an initial matter, Plaintiff faced hurdles in establishing that the MAXAM Defendants had made any material false statements or omissions. To prevail on the securities fraud and common law fraud claims, Class Counsel also had to establish, *inter alia*, scienter, loss causation, liability, and damages. Scienter is extremely difficult to establish in a securities action. *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11 (S.D.N.Y. Sept. 26, 2003) (noting the difficulty of establishing scienter); *see also In re Pall Corp.*, No CV 07-3359 (JS) (GRB), 2013 U.S. Dist. LEXIS 55592, at *9 (E.D.N.Y. Apr. 8, 2013) (noting that scienter is "a difficult element to prove"). Class Counsel also faced the significant risk that Plaintiff's derivative claims would fail for lack of demand futility or that the state law claims would be barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f)(1).[9] In short, there was no guarantee of success.

---

[9] Most recently, the United States Supreme Court issued *Chadbourne & Parke LLP v. Troice*, __ U.S. __, 134 S. Ct. 1058, 1066 (2014), clarifying its interpretation of the "in connection with" requirement under SLUSA. Plaintiff would argue that *Troice* is applicable here where Plaintiff purchased non-covered limited partnership interests in MARF whose managers invested those funds in BLMIS, which purported to trade in covered securities. However, the issue of whether *Troice* would bar common law claims on SLUSA grounds on facts similar to those in this Action was recently before the Second Circuit in *In re: Herald, Primeo and Thema Sec. Litig.*, in which the Court denied plaintiffs-appellants' petition for rehearing or rehearing en banc based on the Supreme Court's intervening ruling in *Troice. See* No. 12-156-cv (L), 12-162 (Con), 2014 U.S. App. LEXIS 9871, at *7 (2d Cir. May 28, 2014). The Second Circuit distinguished *Troice*, noting that, unlike in *Troice*, "the fraud perpetrated by Madoff Securities [BLMIS] was 'material

Indeed, at the time Plaintiff filed the initial complaint and thereafter, there were a number of adverse rulings in similar Madoff feeder-fund litigation. *See, e.g., Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 303 (S.D.N.Y. 2010); *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61 (S.D.N.Y. 2010); *Barron v. Igolnikov*, No. 09 Civ. 4471 (TPG), 2010 U.S. Dist. LEXIS 22267, at *2 (S.D.N.Y. Mar. 10, 2010); *Meridian Horizon Fund, L.P. v. Tremont Group Holdings, Inc.*, 747 F. Supp. 2d. 406 (S.D.N.Y. 2010); *In re Kingate Mgmt. Litig.*, 09 Civ. 5386 (DAB), 2011 U.S. Dist. LEXIS 41598 (S.D.N.Y. Mar. 30, 2011).[10] Most significantly, on October 20, 2010, less than two months before this Action was filed, Hon. Leonard B. Sand, who also presided over this Action initially, dismissed similar securities and common law claims in *Newman v. Family Management Corp.*, No. 08-cv-11215 (LBS) (S.D.N.Y.), which was brought by a limited partner in the FM Low Volatility Fund ("FM Fund"), a "sub-feeder" fund to Madoff through three other funds, including MARF.[11] Judge Sand dismissed the securities fraud claims, holding that plaintiff had failed to sufficiently allege that the managers of the FM Fund had acted with scienter, and also dismissed the common law claims for lack of demand. *See Newman,* 748 F. Supp. 2d at 303. Plaintiff had also asserted claims against the managers of the three other funds, including the MAXAM Defendants, but, because Judge Sand dismissed the state law claims

---

to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'" *Id.* at *5 (quoting *Troice*, 134 S. Ct. at 1066). The Court concluded, "that Madoff Securities (a Ponzi scheme) fraudulently failed to follow through on its promise to place the investments in covered securities does not in any respect remove this case from the ambit of SLUSA as defined in *Troice*." *Id.* at *7.

[10] The parties in all cases appealed to the Second Circuit. *See Newman v. Family Mgmt. Corp.*, 530 F. App'x 21, 23 (2d Cir. 2013) (affirming dismissal); *Meridian Horizon Fund L.P. v. KPMG (Cayman)*, 487 F. App'x 636, 638 (2d Cir. 2012) (affirming dismissal); *Saltz v. First Frontier, L.P.*, 485 F. App'x 461, 462 (2d Cir. 2012) (affirming dismissal); *see also In re: Kingate Management*, No. 11-1397 (2d Cir.) (pending); *Barron v. Igolnikov*, No. 10-1387 (2d Cir.) (settled).

[11] Class Counsel represented plaintiff in the *Newman* action.

against the FM Fund's managers for lack of demand, he did not reach of the merits of the claims against the MAXAM Defendants. With the MAXAM Defendants now in the position of the managers of the FM Fund, there was significant concern that a motion to dismiss in this Action would result in a similar outcome.

Even so, Class Counsel undertook this Action on a wholly contingent basis, investing a substantial amount of time and money to prosecute this Action without a guarantee of compensation or even the recovery of out-of-pocket expenses. Class Counsel's assumption of the contingency fee risk and their efforts to protect the interests of the Settlement Class in the face of these risks further support the reasonableness of the fee request.

**3. The Magnitude and Complexity of the Action Support The Requested Fee**

Courts have long recognized that securities class actions are notoriously complex and difficult to prove. *See, e.g., Fogarazzo*, 2011 U.S. Dist. LEXIS 17747, at *10 ("securities actions are highly complex"); *FLAG Telecom*, 2010 U.S. Dist. LEXIS 119702, at *43 (emphasizing that securities class litigation is "notably difficult and notoriously uncertain") (citation omitted).

This litigation was no different. As set forth above, the Action involved difficult and complex legal and factual matters, and would have entailed extensive document and deposition discovery. The claims involved raised difficult questions about the nature of the alleged material misrepresentations and omissions, whether the MAXAM Defendants acted with scienter, the MAXAM Defendants' duties to conduct due diligence and investigate MARF's investments, and the extent of the MAXAM Defendants' knowledge of Madoff's fraud. As described above, to the extent Plaintiff's state law claims implicated SLUSA preemption, the Action involved an

unsettled and challenging area of law. In short, the Action raised a multitude of complex questions and required an enormous undertaking.

**4. The Quality of Class Counsel's Representation Supports The Requested Fee**

Class Counsel submit that the quality of their efforts in the litigation and their substantial experience in complex litigation of securities and other class actions were key elements in enabling them to negotiate this Settlement. *See WorldCom*, 388 F. Supp. 2d at 359 ("If the Lead Plaintiff had been represented by less tenacious and competent counsel, it is by no means clear that it would have achieved the success it did here on behalf of the Class. ").

As demonstrated by its firm resume (*see* Basar Decl., Ex. 7), Class Counsel, Wolf Haldenstein Adler Freeman & Herz LLP, has received recognition in both federal and state courts nationwide for its experience in complex litigation and, in particular, securities and shareholder derivative litigation. Wolf Haldenstein has also served as lead, co-lead or plaintiffs' counsel in a number of Madoff feeder fund cases, including: *In re Tremont Securities Law, State Law and Insurance Litigation*, No. 08-civ-11117 (TPG) (SDNY) (co-lead counsel for Insurance Class; $100 million settlement); *In re J. Ezra Merkin and BDO Seidman Securities Litigation*, No. 08-cv-10922 (SDNY) (co-lead counsel); *In re Beacon Associates Litigation*, Master File No. 09 Civ. 0777 (LBS) (S.D.N.Y.) (plaintiffs' counsel in federal securities case; $219 million plus global settlement); and *Newman v. Family Management Corp.*, No. 08-cv-11215 (SDNY) (lead counsel).

Another consideration for assessing the quality of Class Counsel's services is the quality of opposing counsel in the case. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *56 (S.D.N.Y. Dec. 23, 2009) ("all Defendants were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and

allegations"); *Maley v. Del Global Techs.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("The quality of opposing counsel is also important in evaluating the quality of the services rendered by Plaintiffs' Class Counsel."). Here, the MAXAM Defendants were represented by skilled and highly regarded counsel from Kobre & Kim LLP, a prominent defense firm with a well-deserved reputation for vigorous advocacy in complex civil defense, as well as considerable experience representing clients in Madoff-related litigation. Courts have repeatedly recognized that the caliber of the opposition reflects the quality of plaintiff's counsel's performance, and in this case, it supports approval of the requested fee. *See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, No. 09 CV 118 (VM), 2012 U.S. Dist. LEXIS 78929, at *6 (S.D.N.Y. June 1, 2012) (considering "the quality and vigor of opposing counsel"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 510 (S.D.N.Y. 2009) (finding plaintiffs' counsel's prosecution against "such formidable opponents . . . an impressive feat"). That Class Counsel successfully negotiated a substantial recovery in the face of highly qualified and well-financed opposition is a testament to the skill and dedication Class Counsel brought to every phase of the Action.

### 5. The Requested Fee In Relation To The Settlement

Class Counsel's fee award must be reasonable under the circumstances of the particular case. *See Goldberger*, 209 F.3d at 47. Courts have interpreted this factor as requiring review of the requested fee award in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class action settlements of comparable value." *In re Comverse Tech., Inc.*, 06-CV-1825 (NGG) (RER), 2010 U.S. Dist. LEXIS 63342, at **9-10 (E.D.N.Y. June 23, 2010) (internal quotation marks and citation omitted).

As set forth herein, the requested 17.5% fee falls well within the range of amounts awarded for settlements of similar magnitude. In light of the percentage amount and lodestar multipliers of the vast majority of fee awards in this Circuit, the requested fee is reasonable.

**6. Public Policy Considerations Support The Requested Fee**

Class action attorneys assume cases on a purely contingent basis. Moreover, the typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense, and the significant expense combined with the high degree of uncertainty of ultimate success means that contingent fees are virtually the only means of recovery in such cases. Thus, class action counsel plays a pivotal role in addressing actionable fraud.

The Supreme Court recently affirmed its longstanding recognition of the importance of private class actions to the enforcement of the securities laws. *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1201-02 (2013) ("Congress, the Executive Branch and this Court, moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission.'") (internal citations omitted). In a similar vein, courts in this Circuit have recognized that private securities class actions encourage enforcement of the securities laws. *See Taft v. Ackermans,* No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *33 (S.D.N.Y. Jan. 31, 2007) ("Public policy supports an award of fees to 'a private attorney acting as a private attorney general,' because this role is 'vital to the continued enforcement and effectiveness of the Securities Acts.'"). Approval of the requested fees and expenses is consistent with these policy considerations.

**7. The Reaction Of The Class To Date Supports The Requested Fee**

In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit consider

the reaction of the Class Members to the fee request in determining the size of the fee award. *See Veeco*, 2007 U.S. Dist. LEXIS 85554, at *32; *Maley*, 186 F. Supp. 2d at 374 ("The reaction by members of the Class is entitled to great weight by the Court.").

As of June 20, 2014, the Claims Administrator had disseminated the Notice to the Settlement Class Members informing them of Lead Counsel's intent to apply for an award of (i) attorneys' fees representing not more than 17.5% of the Settlement Fund; and (ii) reimbursement of litigation expenses advanced on behalf of Plaintiff and the Class, not to exceed the sum of $25,000, plus any interest on such amounts at the same rate and for the same periods as earned by the Settlement Fund.[12] The time to object and/or request an exclusion from the Settlement expired on July 23, 2014. To date, there have been no objections to the amount of attorneys' fees and expenses set forth in the Notice. The absence of any objection to the fee request from any Settlement Class Member strongly militates in favor of the fee request.

### C. Class Counsel's Expenses Were Reasonably Incurred and Necessary to the Prosecution of the Action

Class Counsel is entitled to recover "reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2013 U.S. Dist. LEXIS 131288, at *22 (S.D.N.Y. Sept. 11, 2013) (internal quotation marks and citations omitted). Accordingly, Class Counsel also respectfully requests reimbursement of reasonable and necessary litigation expenses that were incurred in prosecuting this Action.

---

[12] Of the 46 Notice packets sent to Class Members, one returned undeliverable and no updated address was found. Pursuant to the Preliminary Approval Order, ¶ 19, Plaintiff will file an affidavit from the Claims Administrator on August 15, 2014, attesting that Notice was sent to all Class Members, that one package was returned, and that no objections or exclusion requests have been received.

As noted above, the Notice informed potential Settlement Class Members that Class Counsel would apply for reimbursement of litigation expenses in an amount not to exceed $25,000, plus any interest on such amount at the same rate and for the same periods as earned by the Settlement Fund. It is well-established that counsel may properly recover expenses. *See Anwar*, 2012 U.S. Dist. LEXIS 78929, at *9 ("Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses.") (citation omitted); *FLAG Telecom*, 2010 U.S. Dist. LEXIS 119702, at *86 ("[C]ounsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

Class Counsel's declaration, filed contemporaneously with this motion and memorandum, itemizes the various categories of expenses and attests to the accuracy of same. *See* Basar Decl., ¶¶ 48, 49. Class Counsel's expenses are of the type that attorneys typically bill to paying clients in the marketplace and include such costs as copying, electronic legal research, and other incidental expenses incurred in the course of litigation. *See Anwar*, 2012 U.S. Dist. LEXIS 78929, at **9-10 (reimbursing expenses such as "mediation fees, expert witness fees, electronic legal research, photocopying, postage, and travel expenses, each of which is the type 'the paying, arms' length market' reimburses attorneys"). The fact that Class Counsel were willing to expend their own money even though reimbursement was entirely contingent on the success of this litigation is perhaps the best indicator that the expenditures were reasonable and necessary for the direct benefit of the Class.

## IV. CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that the Court award: (i) attorneys' fees in the amount of 17.5% of the Settlement Fund plus interest on such amount at the same rate and for the same periods as earned by the Settlement Fund; and (ii) reimbursement of $ 24,025.50 litigation expenses.

Dated: August 1, 2014
New York, New York

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ, LLP

By: /s/ Demet Basar
Daniel W. Krasner
Email: krasner@whafh.com
Demet Basar
Email: basar@whafh.com
Maja Lukic
Email: Lukic@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4794

*Attorneys for Plaintiff and the Class*