UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM MANNO, On Behalf Of Himself And All Others Similarly Situated, And Derivatively On Behalf Of MAXAM ABSOLUTE RETURN FUND, L.P., <br><br> Plaintiff, <br><br> v. <br><br> MAXAM CAPITAL GP, LLC; MAXAM CAPITAL MANAGEMENT LLC; MAXAM CAPITAL MANAGEMENT LIMITED; and SANDRA L. MANZKE, <br><br> Defendants, <br><br> and MAXAM ABSOLUTE RETURN FUND, L.P.; <br><br> Nominal Defendant. | Civ. No. 1:10-cv-09260-LAP |

**DECLARATION OF DEMET BASAR IN SUPPORT OF PLAINTIFF'S
(A) UNOPPOSED MOTION FOR CERTIFICATION OF THE
SETTLEMENT CLASS AND FINAL APPROVAL OF THE SETTLEMENT
AND PLAN OF ALLOCATION AND (B) MOTION FOR ATTORNEYS'
FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

I, DEMET BASAR, declare, under penalty of perjury:

1.      I am a partner with Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") and counsel for Plaintiff William Manno ("Plaintiff") in the above-captioned action.  I submit this Declaration in support of Plaintiff's: (i) Unopposed Motion for Certification of the Settlement Class and Final Approval of the Settlement and Plan of Allocation; and (ii) Motion for Attorneys' Fees and Reimbursement of Litigation Expenses.

**Factual Background**

2.      Plaintiff is an investor and limited partner in the MAXAM Absolute Return Fund, L.P. ("MARF"),[1] a Delaware limited partnership.  The MAXAM Defendants (defined below) offered limited partnership interests in MARF via the Private Offering of Interests Confidential Private Placement Memorandum, dated July 1, 2006 ("Initial PPM"), as amended and restated on March 21, 2008 by the MAXAM Private Offering of Interests Amended And Restated Confidential Private Placement Memorandum ("Amended PPM") (collectively, referred to as the "PPMs").  Plaintiff purchased limited partnership interests on June 1, 2007, and February 1, 2008, in reliance on the Initial PPM.

3.      Defendant MAXAM Capital GP, LLC ("MAXAM GP") is the General Partner of MARF and Defendant MAXAM Capital Management LLC ("MAXAM Capital") is MARF's investment manager, and, according to the Amended PPM, also became its administrator as of March 21, 2008.[2]  Defendant Sandra L. Manzke ("Manzke") is a principal of MAXAM GP, and Chairman, CEO and founder of MAXAM Capital.  (Defendants Manzke, MAXAM Capital, and MAXAM GP are collectively referred to herein as the "MAXAM Defendants.").[3]

4.      The Limited Partnership Agreement ("LPA") for MARF provides for the indemnification of MAXAM GP against liabilities to third parties, including reasonable attorneys' fees, cost and expenses incurred in connection with the defense of actions or

---

[1] All capitalized terms herein not otherwise defined have the meaning ascribed to them in the Stipulation of Settlement ("Stipulation"), a copy of which is attached hereto as Exhibit 1.

[2] Prior to March 21, 2008, the Fund's administrator was MAXAM Capital Management Limited ("MAXAM Limited"), a wholly-owned subsidiary of MAXAM Capital. Although Plaintiff initially named MAXAM Limited as a defendant, claims against MAXAM Limited were dropped in the Amended Complaint because, as of March 21, 2008, MAXAM Capital began to serve as MARF's administrator, as well as its investment manager.  Defendants have informed Class Counsel that MAXAM Limited no longer conducts business and does not have assets.

[3] The MAXAM Defendants and MARF are collectively referred to as "Defendants" herein.

proceedings.  Under the LPA, (attached hereto as Exhibit 2), MAXAM GP may be indemnified "provided that such error of judgment or other act or omission, action or inaction does not constitute willful misconduct, fraud or bad faith."

5.      Further, as described in the Amended PPM, MAXAM Capital, as the investment manager, is indemnified under the Investment Management Agreement.  A copy of the Amended PPM is attached here to as Exhibit 3.

6.      The MAXAM Defendants invested 100% of MARF's assets with Bernard L. Madoff and his investment firm, Bernard L. Madoff Investment Securities, LLC ("BLMIS").  On December 11, 2008, Madoff was arrested by federal authorities and both he and BLMIS were charged with securities fraud and other federal offenses by the SEC.  When Madoff's fraud was publicly disclosed, 100% of MARF's investments with Madoff were lost.  MARF filed a customer claim in the amount of $215,287,000 against the BLMIS estate under the Securities Investor Protection Act ("SIPA Claim").

**Procedural History of the Litigation**

7.      Plaintiff commenced this Action on December 10, 2010, asserting securities fraud and common law claims against the MAXAM Defendants in connection with their investment of MARF's assets with BLMIS.  Plaintiff alleged direct and derivative counts against the MAXAM Defendants, including direct claims for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a, *et seq.*, and control person liability under Section 20(a) of the Exchange Act against Defendants MAXAM Capital and Manzke, as well as direct and derivative claims for common law fraud, negligent misrepresentation, breach of fiduciary duty, gross negligence and mismanagement, and unjust enrichment.

8.   Plaintiff alleged that the MAXAM Defendants formed MARF as a "feeder fund" to Madoff and made materially false representations and omitted material facts in the PPMs. ¶ 16.4.   Specifically, Plaintiff alleged that the MAXAM Defendants failed to inform MARF's limited partners that 100% of MARF's assets were placed with Madoff who was the sole investment manager, broker-dealer, and custodian of the assets, and that they had done so without conducting any investigation and oversight, and without verifying Madoff's transactions and purported investment strategy. ¶ 8-10, 12; *see also* ¶¶ 80, 82-83. Plaintiff further alleged that the MAXAM Defendants failed to disclose that they had not and would not conduct due diligence on Madoff, notwithstanding their express representations in the PPMs that they had conducted and would continue to conduct a thorough investigation of MARF's investment managers. ¶¶ 16, 92-98.

9.   On May 26, 2011, the Parties entered into a Stipulation and Tolling Agreement and, by Order dated May 31, 2011, this Action was stayed pending notice by any Party of the termination of the Tolling Agreement. Dkt. No. 11. As described below, at the time this Action was commenced and thereafter, there were numerous adverse rulings in actions against managers of Madoff feeder funds (like the MAXAM Defendants), several of which were on appeal and subject to reversal.

10.   On May 13, 2013, the Parties entered into a Stipulation and First Amendment to the Tolling Agreement temporarily lifting the stay of the Action for the sole purpose of permitting Plaintiff to file an amended complaint, which the Court "so ordered" on May 16, 2013. Dkt. No. 16.

11.   On June 17, 2013, Plaintiff filed an Amended Class Action and Derivative Complaint ("Amended Complaint"), asserting the same claims as those in the initial complaint

and, in addition, seeking the imposition of a constructive trust over MARF's assets and injunctive relief.  Dkt. No. 16, ¶ 9.

12.     During this time, Defendants were litigating the Trustee's Adversary Proceeding (defined below), in which, among other things, the Trustee sought to disallow or equitably subordinate MARF's SIPA Claim in the amount of $215,287,000.

**The Trustee's Adversary Proceeding**

13.     On or about December 8, 2010, Irving H. Picard, the trustee for the substantively consolidated liquidation of BLMIS and Madoff (the "Trustee"), filed an adversary proceeding captioned *Picard v. Maxam Absolute Return Fund, L.P. et al.*, No. 10-05342-brl (Bankr. S.D.N.Y.) ("Adversary Proceeding"), against MARF, the MAXAM Defendants, and certain related Persons seeking, among other things, to recover, either directly from MARF or from subsequent transferees, $97,800,000.00 in transfers that were received from BLMIS by MARF; $5,800,000.00 in fees that were received by MAXAM Capital for its management services; and to disallow or equitably subordinate MARF's  $215,287,000.00 SIPA Claim.

14.     On August 14, 2013, the Trustee and the Defendants (and certain other related Persons) entered into a settlement agreement to resolve the Adversary Proceeding (the "Trustee Settlement").  A true and correct copy of the Trustee Settlement is attached hereto as Exhibit 4. Pursuant to the Trustee Settlement, (i) MARF agreed to convey to the Trustee the amount of $97,800,000.00 ("Trustee's Settlement Payment"); and (ii) the Trustee agreed to allow MARF's SIPA Claim plus a $61,400,000.00 credit against the BLMIS estate pursuant to Section 502(h) of the United States Bankruptcy Code, for a total allowed claim of $276,687,000.00 ("Allowed SIPA Claim").  Trustee Settlement, ¶ 10.

15.     In addition, under the Trustee Settlement, the Sandra L. Manzke Revocable Trust ("Manzke Trust"), a limited partner of MARF, waived 50% of its right to any distribution from the funds MARF receives on its Allowed SIPA Claim (*id*. at ¶ 3), and MAXAM Capital and MAXAM GP agreed to forego fees for managing or administering such funds. *Id*. at 4.

16.     Plaintiff made a limited objection to the proposed Trustee Settlement on September 10, 2013, seeking clarification of certain language in the Trustee Settlement agreement that Plaintiff interpreted as potentially having a binding, precedential or evidentiary effect with respect to the MAXAM Defendants' ability to deduct amounts from the proceeds of MARF's Allowed SIPA Claim to cover certain expenses and preexisting obligations before making distributions to MARF's investors.  Paragraph 4 of the Trustee Settlement provides, in relevant part: "In addition, except with respect to amounts needed to pay reasonable and necessary expenses associated with accounting, tax, legal, regulatory, other costs, or preexisting obligations, all amounts received by MAXAM Capital or MAXAM GP, either directly or indirectly, from any distribution made by the BLMIS estate to MARF LP, shall be distributed solely to investors in MARF LP or as directed by MAXAM Capital (other than to MAXAM Capital or MAXAM GP) in accordance with the LPA."  A copy of Plaintiff's Objection is attached hereto as Exhibit 5.

17.     After negotiation, Plaintiff's limited objection was resolved by including certain clarifying language in the proposed final judgment approving the proposed Trustee Settlement and dismissing the Adversary Proceeding, which was entered on September 17, 2013.  A copy of the Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Agreement By and Between the Trustee and MAXAM Absolute Return Fund, L.P.; MAXAM Absolute Return Fund, Ltd.;

MAXAM Capital Management LLC; MAXAM Capital GP LLC; Sandra L. Manzke Revocable Trust; Sandra L. Manzke; Suzanne Hammond; Walker Manzke; and April Bukofser Manzke ("Order") is attached hereto as Exhibit 6.  The relevant language provides that "for the avoidance of doubt, the language contained in Paragraph 4 of the Agreement shall have no binding, precedential or evidentiary effect on non-parties to this Adversary Proceeding, and is without prejudice to the rights of such non-parties, if any, with respect to the use of or manner of distributing any amounts from any distribution made by the BLMIS estate to MARF LP."  Order, at 2.

18.     Defendants have since met their settlement obligations and the Trustee has distributed $21,340,618.73 to MARF, a portion of which has been distributed to MARF's limited partners.   MARF will make additional distributions to its limited partners as the Trustee distributes funds.

**Settlement**

19.     This Settlement follows months of good faith, arms' length negotiations.  In late September 2013, on the heels of the resolution of Plaintiff's objection in the Adversary Proceeding, the Parties engaged in exploratory discussions concerning a potential resolution of this Action but these early discussions proved unsuccessful.  In October 2013, the Parties again explored the possibility of a settlement and engaged in extensive good faith, arms'-length negotiations over the next two months in numerous telephone conversations and several in-person meetings.

20.     In the course of these discussions, Plaintiff considered the strengths and weaknesses of the Parties' respective claims and defenses and the risks and costs of continued litigation.  Plaintiff also had a full opportunity to consider Defendants' financial condition. In

connection with the settlement negotiations, Plaintiff received affidavits from the MAXAM Defendants regarding their financial assets available to satisfy a settlement.   The parties evaluated numerous proposals for settlement and ultimately reached an agreement-in-principle to resolve the Action for the consideration set forth in the Stipulation and to fully release mutual claims as set forth in the Stipulation.  Stipulation, ¶¶ 4.1, 4.2.

21.     On October 23, 2013, counsel for the MAXAM Defendants informed the Court in writing, with permission from all Parties, of the settlement-in-principle (Dkt. No. 19), which the Court "so ordered" on October 24, 2013, and stayed the Action pending Settlement.  Dkt. No. 20.

22.     After reaching agreement on the basic terms of the settlement, the Parties negotiated and entered into a memorandum of understanding, and, subsequently, spent months carefully preparing a settlement agreement, which entailed negotiating appropriate language, reviewing information about Defendants' financial condition, and the resolution of several complex issues.   Class Counsel also directed its efforts to preparing preliminary settlement approval papers and supporting documents, including a clear and informative notice of settlement.  On April 25, 2014, the Parties entered into a Stipulation of Settlement, which was filed with the Court on May 21, 2014.  Dkt. No. 26-1.  On May 21, 2014, Plaintiff filed a motion for preliminary approval of the proposed Settlement and class certification for settlement purposes.  Dkt. No. 22.

23.     On June 10, 2014, the Court preliminarily approved the Settlement, directed the mailing of Notice to the Settlement Class Members, and scheduled a Settlement Fairness Hearing for August 22, 2014 (the "Preliminary Approval Order").  Dkt. No. 28.  As described in greater detail below, Notice was sent to the limited partners in accordance with the Preliminary Approval Order.

**Settlement Terms**

24.     The Settlement provides that in consideration for the full and final release, settlement, and discharge of all claims against the MAXAM Defendants, Defendants will transfer an Initial Settlement Payment of $1,601,372.00 into the Settlement Fund on behalf of all MAXAM Defendants within ten days of the parties' execution of the Stipulation.  Stipulation, ¶ 3.1.  Defendants have already made the initial Settlement Payment, which is in the Settlement Fund.  A payment of $250,000 is to be paid into the Settlement Fund if certain conditions set forth in a confidential supplemental stipulation among the parties dated April 25, 2014, are satisfied.  *Id*. ¶ 3.2.    Defendants have also established a Future Litigation Reserve of $1,257,187.10.  *Id*. ¶ 3.3.  If there are no Claims pending against any Defendant (or Person to whom any Defendant owes an indemnification obligation) as of December 12, 2014, the Future Litigation Reserve will be terminated, and any remaining funds in the Future Litigation Reserve will be paid into the Settlement Fund.  *Id*. ¶ 3.3.

25.     Under the Stipulation, within 14 days of the dissolution of the Future Litigation Reserve, Defendants will affirm in writing that monies withdrawn from the Future Litigation Reserve were used only to satisfy reasonable legal fees and expenses, and will provide to Plaintiff's Counsel an accounting of any such fees and expenses.  *Id*. ¶ 3.4.

26.     In addition to the foregoing monetary consideration, the Settlement provides that the Manzke Trust, which is a limited partner of MARF and for which Defendant Manzke is the sole trustee, will submit a claim to the Madoff Victim Fund[4] for losses that the Manzke Trust incurred as a result of Madoff's fraud and will assign to the Settlement Fund all distributions, if

---

[4] The Madoff Victim Fund, www.madoffvictimfund.com, was established by the Department of Justice Asset Forfeiture Distribution Program for distribution to net losers of Madoff's fraud.

any, that the Manzke Trust receives from the Madoff Victim Fund.  Defendant Manzke has filed a claim on behalf of the Manzke Trust with the Madoff Victim Fund.

**Notice Was Properly Sent To The Settlement Class**

27.    The Notice of Pendency of Class and Derivative Action and Proposed Settlement and Settlement Fairness Hearing (the "Notice") informed potential Settlement Class members, *inter alia*, that a Settlement Fairness Hearing is scheduled for August 22, 2014, at 10:00 a.m., and the deadlines and applicable requirements: (i) to request exclusion from the Settlement Class by July 23, 2014; (ii) to file an objection to the proposed Settlement, Plan of Allocation, or Class Counsel's request for attorneys' fees and reimbursement of litigation expenses by July 23, 2014; and (iii) to file a Notice of Intention to appear at the Settlement Fairness Hearing by August 12, 2014.  The Notices were prepopulated with each Class Member's net equity losses in MARF and Class Members did not need to submit a proof of claim to be included in the Class.

28.    The Notice also apprised Settlement Class Members of Class Counsel's intent intends to seek an award of (i) attorneys' fees representing not more than 17.5% of the Settlement Fund, plus any interest on such amount at the same rate and for the same periods as earned by the Settlement Fund; and (ii) reimbursement of litigation expenses advanced on behalf of Plaintiff and the Class, not to exceed the sum of $25,000, plus any interest on such amount at the same rate and for the same periods as earned by the Settlement Fund.

29.    The Court-appointed claims administrator Garden City Group ("GCG" or the "Claims Administrator") established a website specifically for the Settlement, which provided Class Members access to information about the Settlement, including downloadable copies of the Notice, the Preliminary Approval Order, and the Stipulation of Settlement.    *See*

http://www.gcginc.com/cases-info/MAM.    Information about the Settlement and relevant documents are also available on Class Counsel's website: www.whafh.com.

30.    On April 30, 2014, Defendants provided Class Counsel with initial contact and investor information for all of the limited partners in MARF and supplemented this production on June 11, 16, 17, and 18, 2014, with revised investment and contact information.

31.    By June 20, 2014, pursuant the Preliminary Approval Order, ¶ 16, Class Counsel and GCG sent Notice by mail (and email where feasible) to all of the Settlement Class Members.

32.    Of the 46 Notice packets sent to Class Members, one returned undeliverable and despite Plaintiff's Claims Administrator Garden City Group's efforts to find an updated address, the limited partner has not been located to date.  Pursuant to the Preliminary Approval Order, ¶ 19, Plaintiff will file an affidavit from GCG on August 15, 2014, attesting that Notice was sent to all Class Members, that one package was returned, and that no objections or exclusion requests have been received.

33.    Members of the Settlement Class who wished to exclude themselves from or object to the Settlement had to make their requests in writing no later than thirty days prior to the August 22, 2014 Settlement Fairness Hearing.  Dkt. No. 28 at ¶¶ 20-21.

34.    That deadline passed on July 23, 2014, with no objections or exclusion requests being filed by Class Members—nor have any been filed since.

**<u>The Attorneys' Fees and Expenses Award Is Reasonable</u>**

35.    Class Counsel filed the first and only class action complaint against the MAXAM Defendants here and has actively litigated all aspects of the Action to date.

36.    Prior to filing the initial complaint, Class Counsel researched and conducted a thorough investigation of the facts underlying Plaintiff's allegations, including reviewing

account statements, private placement memoranda and other documents relating to MARF, and various press releases, interviews, news articles, and other media reports concerning Madoff and the MAXAM Defendants. Class Counsel also exhaustively researched and analyzed the applicable body of law with respect to potential and the actual claims asserted in this Action, and the defenses thereto.

37.     Class Counsel also reviewed and analyzed pleadings and evidence from other similar and/or related actions filed against various hedge fund managers who placed their clients' funds with Madoff, including the MAXAM Defendants here. Indeed, at the time Plaintiff filed the initial complaint and throughout this litigation, there were a number of adverse rulings in similar Madoff feeder-fund actions. *See, e.g., Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 303 (S.D.N.Y. 2010); *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61 (S.D.N.Y. 2010); *Barron v. Igolnikov*, No. 09 Civ. 4471 (TPG), 2010 U.S. Dist. LEXIS 22267, at *2 (S.D.N.Y. Mar. 10, 2010); *Meridian Horizon Fund, L.P. v. Tremont Group Holdings, Inc.*, 747 F. Supp.2d 406 (S.D.N.Y. 2010); *In re Kingate Mgmt. Litig.*, 09 Civ. 5386 (DAB), 2011 U.S. Dist. LEXIS 41598 (S.D.N.Y. Mar. 30, 2011). The parties in all of these cases appealed the District Court decisions to the Second Circuit Court of Appeals,[5] and Class Counsel closely followed the developments in each appeal.

38.     Most significantly, on October 20, 2010, shortly before Plaintiff filed the initial complaint in this Action, Hon. Leonard B. Sand, who also presided over this Action initially, dismissed similar securities and common law claims in *Newman v. Family Management Corp.*,

---

[5] *See Newman v. Family Mgmt. Corp.*, 530 F. App'x 21 (2d Cir. 2013) (affirming dismissal); *Meridian Horizon Fund L.P. v. KPMG (Cayman)*, 487 F. App'x 636 (2d Cir. 2012) (affirming dismissal); *Saltz v. First Frontier, L.P.*, 485 F. App'x 461 (2d Cir. 2012) (affirming dismissal); *see also In re: Kingate Management*, No. 11-1397 (2d Cir.) (pending); *Barron v. Igolnikov*, No. 10-1387 (2d Cir.) (settled).

No. 08-cv-11215 (LBS) (S.D.N.Y.), which was brought by a limited partner in the FM Low Volatility Fund ("FM Fund"), a "sub-feeder" fund to Madoff through three other funds, including MARF.[6]  In addition to claims against the managers of the FM Fund, *Newman* asserted direct and derivative securities and common law claims against the managers of the other funds, including the MAXAM Defendants, and the parties engaged in extensive briefing.  Judge Sand dismissed the securities fraud claims against the FM Fund's managers, holding that plaintiff had failed to sufficiently allege scienter, and also dismissed the common law claims against the managers for lack of demand.  *See Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 303 (S.D.N.Y. 2010).  (The Court did not reach the merits of the claims against the MAXAM Defendants.).  The Second Circuit affirmed the dismissal.  *See Newman v. Family Mgmt. Corp.*, 530 F. App'x 21, 28 (2d Cir. 2013).

39.    Class Counsel also closely monitored the Trustee's Adversary Proceeding (described above), reviewing the factual allegations in the Trustee's complaint and the available discovery generated in the Adversary Proceeding.  Class Counsel reviewed the numerous briefs filed by the Trustee and the MAXAM Defendants in the Adversary Proceeding and, later, on appeal.  As noted above, in a further effort to protect the rights of Plaintiff and the Class, Class Counsel researched, drafted, and filed a limited objection to the proposed Trustee Settlement, and negotiated clarifying language, which was ultimately included in the proposed final judgment approving the proposed Trustee Settlement and dismissing the Adversary Proceeding,

40.    Class Counsel also retrieved, reviewed, and analyzed pleadings, other court documents and available evidence in the action entitled Retirement Program for Employees of the *Town of Fairfield, et al. v. Bernard L. Madoff, et a*l., FBT CV 095023735 (the "Fairfield

---

[6] Class Counsel represented plaintiff in the *Newman* action.

Action"), pending in the Connecticut Superior Court.  The Fairfield Action was an individual action by three investors in MARF against, among others, certain of the MAXAM Defendants, and was settled on March 13, 2013.

41.    Finally, Class Counsel has negotiated and analyzed the proposed Settlement before the Court; prepared and submitted preliminary approval papers in support of the proposed Settlement; prepared and submitting the Stipulation of Settlement and supporting documents, including the Notice, the Preliminary Approval Order, and the Proposed Final Judgment and Order of Dismissal with Prejudice; and has monitored the Claims Administrator's mailing of Notice to Settlement Class Members.

## Class Counsel's Qualifications, Lodestar and Expenses

42.    As demonstrated in its firm resume (*see* Exhibit 7), Class Counsel has extensive experience and specialized expertise in the field of complex securities class action and shareholder derivative litigation.  Wolf Haldenstein has served as lead, co-lead or plaintiffs' counsel in a number of Madoff feeder fund cases, including: *In re Tremont Securities Law, State Law and Insurance Litigation*, No. 08-civ-11117 (TPG) (SDNY) (co-lead counsel for Insurance Class; $100 million settlement); *In re J. Ezra Merkin and BDO Seidman Securities Litigation*, No. 08-cv-10922 (SDNY) (co-lead counsel); *In re Beacon Associates Litigation*, Master File No. 09 Civ. 0777 (LBS) (S.D.N.Y.) (plaintiffs' counsel in federal securities case; $219 million plus global settlement); and *Newman v. Family Management Corp.*, No. 08-cv-11215 (SDNY).

43.    The schedule below is a detailed summary indicating the amount of time each attorney, paralegal, and other professional and para-professional of my firm spent performing work in the litigation since the inception of this Action through the present.  The schedule includes the name of each person who worked on the case, hourly billing rates, and the number

of hours expended. The backgrounds and qualifications of the attorneys who worked on the matter are set forth in the Firm Resume. *See* Ex. 7.

44.     The lodestar calculation is based on the firm's current billing rates, including for attorneys and employees no longer employed by the firm, at the firm's customary hourly rates charged to our fee-paying clients. This schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by the firm. These records are available for review at the Court's request.

45.     As set forth below, my firm expended 1,753.10 hours of professional time in investigating, prosecuting and ultimately settling this Action (excluding the time spent on the instant Declaration and the fee and expense request). The firm's total lodestar, derived by multiplying these hours by Wolf Haldenstein's current hourly rates for its attorneys, paralegals, and other professional staff, is $905,072.00.

| Attorneys | Hours | Rate | Lodestar |
|---|---|---|---|
| Daniel W. Krasner | 25.80 | $910.00 | $23,478.00 |
| Demet Basar | 738.70 | $695.00 | $513,396.50 |
| Maja Lukic | 711.60 | $375.00 | $266,850.00 |
| Giti Baghban | 103.50 | $405.00 | $41,917.50 |
| Paulette S. Fox | 61.00 | $485.00 | $29,585.00 |
| | | | |
| **Total Attorneys** | **1,640.60** | | **$875,227.00** |

| Paraprofessionals/Others | Hours | Rate | Lodestar |
|---|---|---|---|
| James A. Cirigliano | 39.50 | $320.00 | $12,640.00 |
| Danielle S. Wilborne | 31.50 | $230.00 | $7,245.00 |
| David I. Weinstein | 41.50 | $240.00 | $9,960.00 |
| | | | |
| **Total Paraprofessionals** | **112.50** | | **$29,845.00** |

| **TOTAL TIME** | **1,753.10** | | **$905,072.00** |
|---|---|---|---|

15

46.     Class Counsel is not requesting compensation for services relating to the preparation of this fee declaration or the fee request.

47.     The significant time and effort that my firm has devoted to this Action and Wolf Haldenstein's commitment to the efficient management of the litigation, at the risk of non-recovery, support approval of the requested fee award.

48.     The firm also expended a total of $24,025.50 in unreimbursed expenses in connection with the prosecution of this litigation since its inception.   Those expenses are allocated, as follows:

| **Expenses** | |
|---|---|
| Computer Research | $18,383.74 |
| Travel / Transportation | $820.15 |
| Phone / Fax / Postage | $215.26 |
| Reproduction / Duplication | $3,761.10 |
| Professional Services | $262.80 |
| Meals | $179.98 |
| Secretarial Overtime | $402.47 |
| **TOTAL EXPENSES** | **$24,025.50** |

49.     These expenses were reasonably and necessarily incurred for the prosecution of this Action.   Through the litigation, Wolf Haldenstein has made every effort to operate as efficiently as possible and to avoid unnecessary duplication.   These expenses are reflected in the books and records of this firm, which are prepared from expense vouchers and check records and which comprise an accurate record of the expenses incurred.

## Conclusion

50.     I respectfully submit the Settlement represents an excellent result for the Settlement Class in an Action that carried significant risks and it should be approved as fair, reasonable, and adequate.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed at New York, New York, this 1st day of August, 2014.

_____/s/ Demet Basar_____
Demet Basar